UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CSC HOLDINGS, INC.,                                        **MEMORANDUM**
                                                           **AND ORDER**
                          Plaintiff                        CV 03-1848 (WDW)


               -against-


ANDREW CASS,


                          Defendant.
-----------------------------------------------------------X
**APPEARANCES:**
**LEFKOWITZ, LOUIS & SULLIVAN, L.L.P.**
Attorneys for Plaintiff
350 Jericho Turnpike
Suite 300
Jericho, NY 11753
By: Shaun K. Hogan, Esq.

**OVED & OVED LLP**
Attorneys for Defendant
110 Greene Street
Suite 1102
New York, NY 10012
By: Terrence Oved, Esq.

**WALL, Magistrate Judge:**

        Before the court on consent is defendant's Motion for Summary Judgment.  For the

reasons set forth below, the defendant's motion is denied.  Also before the court is the plaintiff's

Motion for an Order Authorizing Disclosure of Subscriber Information Pursuant to 47 U.S.C.

§551(c)(2)(B) and for additional discovery.  That motion is granted.

                                **BACKGROUND**

        This is an action commenced by plaintiff CSC Holdings, Inc. (also known as

"Cablevision") against defendant Andrew Cass ("Cass"), for alleged violations of the

Communications Act of 1934.  Cablevision alleges that Cass schemed to illegally use, sell, or

distribute unauthorized cable boxes for profit, in violation of 47 U.S.C. §§ 605 and 553.

Cablevision constructs, operates and maintains cable television systems in Nassau and Suffolk

Counties, in addition to other counties in New York, New Jersey and Connecticut. *Id.* ¶6.

Cablevision offers different levels of programming, known as "packages," to which customers

may subscribe; subscription to different packages allows customers to watch different channels.

In addition, Cablevision offers its customers pay-per-view programming, which allows customers

to purchase individual programs such as sporting events and movies. Customers are allowed to

receive only those channels to which they have subscribed. *Id.* ¶¶7-9.

Cablevision transmits its services in the form of encoded or "scrambled" signals to

subscribers' homes via wiring and other equipment. Subscribers receive these signals through a

a "cable box," a device issued by Cablevision that descrambles the signals and converts them

into channels that subscribers can watch on their televisions. The signals are scrambled to

prevent subscribers from receiving programming for which they have not paid. *Id.* ¶10. There

are unauthorized devices available that descramble signals, allowing the device owners to

illegally view channels and programs for which they have not paid. *Id.* ¶14. The unauthorized

use, sale, or distribution of such devices is illegal, pursuant to 47 U.S.C. §§605 and 553.

It is undisputed that between January and April of 2001, Cass purchased a total of 71 RFT

Gold pirate decoder devices from Wholesale Electronics, Inc. ("Wholesale"), shipped to Cass at

his workplace at 600 Old Country Road, Garden City, New York. Def.'s Rule 56.1 Statement

¶13; *see also* Pl.'s Ex. I. He also returned five RFT-Pioneer devices, which do not work in

Cablevision's market area. *See* Kempton Aff. ¶19. Cablevision has not authorized the use of

cable boxes sold by Wholesale to be used with its cable system. Compl. ¶18. Cass claims that

he never used, sold, or distributed the 71 boxes (Def.'s Rule 56.1 Stmt. ¶13), and that he gave all of the 71 boxes that he purchased from Wholesale into the custody of his attorneys, who made them available for two inspections by the plaintiff. *See* Cass Aff. ¶33; Kempton Aff. ¶20; Beyrodt Aff. ¶3-5; Flaim Aff. ¶2-5. He maintains that he purchased the devices to give as gifts, in the belief that they would "legally provide the user with additional cable stations." *Id.* ¶31. Cass claims that he would never have purchased the cable boxes had he known that they would illegally provide the user with additional cable stations, and that once he learned they were illegal, he did not give them away. *Id*. ¶¶31, 32. Cass now seeks summary judgment, claiming that Cablevision has failed to present direct evidence that he used, sold, or distributed the devices in Cablevision's market area, and that even if distribution or use is inferred, Cablevision cannot prevail because it is not a "person aggrieved" under 47 U.S.C. §605 (d)(6). Def.'s Rule 56.1 Stmt. ¶18; *see also* Def.'s Mem. in Supp. at 6-10.

Cablevision asserts that Cass did distribute the 71 cable boxes that he purchased from Wholesale. Cablevision argues that Cass's explanations of his decision to retain the 71 cable boxes are implausible, and that the 71 cable boxes that Cass produced for inspection were not the same 71 devices that he purchased from Wholesale, but were substitute boxes bought later, from a source other than Wholesale. Cablevision bases this claim on the inspections of the devices produced by Cass, conducted by Cablevision investigators Joseph Flaim and Frank Beyrodt, who assert first, that the boxes were lacking stickers that are always affixed to boxes sold by Wholesale, and second, that the boxes contained two sets of instructions not used by Wholesale, one of which was labeled "2002 Instruction Guide," when the boxes were purchased in January 2001. *See* Pl.'s Mem. in Opp. at 14-17. Cass has suggested that the Cablevision investigators

tampered with the boxes, although that claim is not reiterated in Cass's motion papers.  *See*

Def.'s Rule 56.1 Counterstatement §3, ¶¶a-g.  Cablevision claims that Cass bought the

replacement devices in anticipation of litigation because he had already distributed the cable

boxes that he purchased from Wholesale.  Finally, Cablevision claims that it is a "person

aggrieved" pursuant to 47 U.S.C. §605 (d)(6).

## DISCUSSION

**A.) Defendant's Motion for Summary Judgment:**

**1.) Summary Judgment Standards:**

"'Summary judgment is appropriate where there are no genuine disputes concerning any

material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica*

*Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In*

*re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In deciding a summary judgment motion,

the district court must resolve all ambiguities and draw all reasonable inferences in the light most

favorable to the opposing party.  *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150

F.3d 132, 137 (2d Cir. 1998).   If there is evidence in the record as to any material fact from

which an inference could be drawn in favor of the non-movant, summary judgment is

unavailable.  *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996).  The applicable

substantive law determines which facts are critical and which are irrelevant.  *See Anderson v.*

*Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine

issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point

to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322).

A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). Where, however, evaluation of the non-movant's proof rests on the credibility of the non-movant versus the movant, a genuine issue exists and summary judgment cannot be granted. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *See* Wright, Miller & Kane*, Federal Practice and Procedure,* Vol. 10A, §2726 (quoting Advisory Committee Notes to1963 amendment of Rule 56(e)). With these standards in mind, the court now turns to Cass's motion.

**2.) Cablevision's Claims against Cass:**

The plaintiff alleges that Cass has violated 47 U.S.C. §553(a)(1) and 47 U.S.C. 605(a) & (e)(4). Those statutes provide, in pertinent part:

47 U.S.C. §553(a): (1) No person shall intercept or receive or assist in intercepting

or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. §605(a): **Practices Prohibited**
. . . No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C.§605(e)(4): Any person who manufactures, assembles, modifies, imports, exports, sells or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

Also relevant to plaintiff's claims is section 605(e)(3)(A), which provides that "[a]ny person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction."

Cass maintains that he is entitled to summary judgment because Cablevision has failed to provide direct evidence that he used, sold or distributed the converter devices in question in Cablevision's market area, and that such direct evidence is required in order for Cablevision to prove that it is an aggrieved party under the relevant statute. *See generally,* Def.'s Mem. in Supp. This line of argument raises two questions: first, must the plaintiff present direct evidence of use and/or distribution, and second, must the plaintiff prove by direct evidence that the alleged distribution was in Cablevision's market area, thus making Cablevision a person aggrieved pursuant to section 605(e)(3)(A)? The court now turns to those questions.

**3.) Direct/Circumstantial Evidence and Inference of Distribution:**

Cass claims that "Cablevision has been unable to offer any evidence whatsoever that Mr. Cass personally used, distributed or sold any of the Cable Boxes." Def.'s Mem. in Supp. at 5. Moreover, Cass argues as to distribution and sale that "this Court has required evidence of actual sales of an illegal cable box as opposed to Plaintiff's mere allegation." *Id. (*relying on *V Cable, Inc. v. Guercio,* 148 F. Supp. 2d 236 (E.D.N.Y. 2001)). A mere inference of sale, use, distribution or manufacturing by the defendant is insufficient, Cass argues. *Id.*

Cablevision disagrees with Cass's contention, arguing that direct evidence is not required and that circumstantial evidence can suffice. The court agrees with Cablevision's view. It is well established generally that a plaintiff can prevail at trial on a showing of circumstantial evidence alone, even in a criminal proceeding where the standard of proof is higher. *See, e.g., United States v. Fermin,* 32 F.3d 674, 678 (2d Cir. 1994) ("[A] jury may always base its verdict on reasonable inferences from circumstantial evidence."). And, there is nothing in the relevant statutes that expressly requires direct evidence of distribution. In *Falk v. County of Suffolk,* 781 F. Supp. 146, 150 (E.D.N.Y. 1991), this court held that a civil claim for intercepted communications brought under 18 U.S.C. §2520 could be established by circumstantial evidence, noting that the nature of the tort at issue "as a surreptitious activity that is successful only if undiscovered - is such that it may be established through circumstantial evidence." The same may be said about the tort at issue here, pursuant to 47 U.S.C. §§ 551 & 605, which tort involves "devices for which there is no legitimate retail market or legal purpose." *Guercio,* 148 F. Supp. 2d at 243. *See also DirecTV, Inc. v. Hyatt,* 302 F. Supp. 2d 797, 802 (W.D. Mich. 2004) (denying summary judgment based on allegation of lack of direct evidence in case brought under

47 U.S.C. §605 (a)) (citing *Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990)).

Indeed, Cablevision cites to several cases in this Circuit for the proposition that, in the absence of direct evidence, an inference of distribution pursuant to section 605 is fair because there is little one can do with numerous cable boxes other than sell or distribute them.  *See* Pl.'s Mem. in Opp. at 4-8 (citing *Cablevision Sys. Corp. v. DePalma*, 1989 WL 8165 (E.D.N.Y. Jan. 17, 1989); *Time Warner Cable of New York City v. Papathanasis*, 1998 U.S. Dist. LEXIS 22672, at *11 (S.D.N.Y. Sept. 22, 1998); *Time Warner Entm't/Advance-Newhouse P'ship v. Stockton*, 2004 WL 1739520, at *3 (N.D.N.Y. Aug. 3, 2004); *CSC Holdings, Inc. v. Spady*, No. 00 Civ. 9690 (S.D.N.Y. June 4, 2002) (Attached as Plaintiff's Ex. F[1]); *Cablevision of Southern Connecticut, L.P. v. Smith*, 141 F. Supp. 2d 277, 287 (D. Conn. 2001)).  As the court in *DePalma* explained,  "[w]hen a person buys or imports goods in such large quantities that the overabundance renders the extra goods useless to that person, the only natural conclusion to be drawn is that that person purchased those goods with the intent of selling or distributing them into the marketplace." *DePalma,* 1989 WL 8165 at *4.

Nor does *Guercio* require direct evidence for proof of distribution or sale pursuant to section 605, as Cass suggests.  Although the court in *Guercio* found that there was "no direct evidence that Guercio either used or distributed one or more pirated descrambling devices in plaintiffs' market area," it did not hold that such evidence is required for proof of distribution, finding that the "sheer volume" of the descramblers purchased by Guercio "strongly suggests that

---

[1]The defendant's claim that Cablevision improperly annexed unpublished opinions to its opposition papers in violation of a Second Circuit rule is without merit.  The Second Circuit rules apply to Second Circuit decisions, not to District Court opinions.  *See* Second Circuit Rule 0.23.

defendant was marketing descramblers for use somewhere." 148 F. Supp. at 243. Instead, the court based its grant of summary judgment to the defendant on a lack of evidence as to whether any boxes were distributed in the plaintiff's market area. *See id.* The market area issue is discussed further *infra*.

Thus, a plaintiff need not prove distribution or use pursuant to 47 U.S.C. §605(e)(4) by direct evidence; circumstantial evidence is sufficient. Further, this court finds that, on the record before it, issues of material fact have been presented on the question of whether an inference regarding distribution could be drawn in favor of the non-moving party. This is so despite Cass's alternative argument that the plaintiff has presented no evidence whatever of distribution or sale, even if circumstantial evidence is permitted. *See* Def.'s Mem. in Supp. at 5-6; Def.'s Reply Mem. in Supp.[2] at 4-12. Cass claims that he never distributed the boxes, and turned them over to his former attorney for inspection by the plaintiff. He has also claimed that the plaintiff tampered with the boxes during the inspection. *See* Def.'s Rule 56.1 Counterstatment §3, ¶¶a-g. The plaintiff argues that, upon inspection of the boxes, its inspectors suspected that they were not the original 71 boxes purchased by Cass, inasmuch as the instructions in the boxes were dated 2002 and boxes were purchased in January-April 2001, and the boxes were missing stickers that were

---

[2]The court notes that the defendant's Reply Memorandum of Law does not comply with the undersigned's Individual Rules, inasmuch as it is almost twice as long as the permitted ten pages, and puts a good deal of the argument in footnotes using an extremely small font. Cass's December 30th letter also violates the Local Rules and the undersigned's Individual Rules. The plaintiff's excessive use of footnotes in its brief is equally inappropriate, and its Rule 56.1 Statement does not adhere to the requirement that asserted facts must be set forth in paragraphs that correspond in number and content to the movant's. The court opted to not reject the briefs, the letter, and the Rule 56.1 Counterstatement and has considered them in deciding these motions, but cautions the parties that future submissions that ignore the applicable rules will not be accepted or considered.

always attached to boxes sold by Wholesale.  See Def.'s Mem. in Opp. at 16-17.

The plaintiff's theory is that Cass distributed the original 71 boxes purchased from Wholesale, and replaced them with new boxes purchased from a different source when he learned that Cablevision was threatening legal action.  In support of its claim that the devices Cablevision inspected were different from the ones Cass originally purchased from Wholesale, Cablevision has submitted affidavits from its inspectors, Donald Kempton, Joseph Flaim and Frank Beyrodt, along with the sworn affidavit of Carlo Mireles, a former principal of Wholesale Electronics, Inc.  The Kempton, Flaim and Beyrodt affidavits are sufficient to raise a material issue of fact in this regard, despite Cass's argument that their information was gleaned from Carlo Mireles, whose credibility Cass attacks.  See Reply Mem. at 8-11.  The presence of documents labeled "2002 Instructions" in boxes sold in 2001, for example, is not something that the inspectors would have had to learn from Mireles to raise questions in their minds as to the date of purchase.  Moreover, questions of credibility cannot be determined on summary judgment.  And, Cass's claim that these instructions were planted in the boxes by Cablevision is certainly not an issue to be determined on summary judgment, as numerous issues of material fact exist in regard to it.  Thus, the defendants have pointed to issues of material fact that must be resolved at trial in regard to whether Cass distributed the cable boxes.  The court now turns to Cass's claim that Cablevision has adduced no evidence that it is a "person aggrieved."

**4.) "Person Aggrieved"/ Distribution in Market Area**

Cass additionally argues that, even if Cablevision can prove by inference that Cass used, sold, or distributed the devices in question, Cablevision is not a "person aggrieved" and,

therefore, cannot prevail on its claims. A "person aggrieved" is defined in 47 U.S.C. §605 (d)(6) as:

> [A]ny person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of paragraph (4) of subsection (e) of this section, shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

Cass maintains that, pursuant to this provision, Cablevision must prove that it was "actually harmed" by the defendant and that such harm must be "actually, directly and sufficiently established." Def.'s Mem. in Supp. at 7. While the court does not dispute that proof will have to be "sufficiently" established, it does not agree that direct proof is necessary. Cass relies on *Guercio* for the proposition that "in order to maintain an action against a subscriber, Cablevision [is] required to prove direct evidence of any sales made by the defendant in Cablevision's market area and that without direct evidence of such sales made by the defendant to Cablevision's customers within Cablevision's market area, Cablevision could not be considered a 'person aggrieved' under the Communications Act." *Id.* at 7-8.

This court does not agree that *Guercio* required "direct evidence" of distribution in the plaintiff's market area. The *Guercio* court held that "[u]nless Cablevision proves sales by [the defendant] to customers within its market area, it is not a 'person aggrieved' under Sections 553(c)(1) and 605(e)(3)(A) and, accordingly, may not recover damages for defendant's violation, if any, of the Communications Act." 148 F. Supp. 2d at 243. Cablevision, the court found in that case, had presented "<u>no</u> evidence to suggest, much less establish, that Guercio sold in Nassau or Suffolk Counties, [and] [t]he scant evidence available tends to suggest otherwise." *Id.* (emphasis added). The court did not rule that proof of market area distribution had to be direct,

and implied that circumstantial could suffice, noting that there was "no evidence, <u>circumstantial</u> <u>or otherwise</u>, to indicate" that sales were made in the relevant market area. *Id.* at 244 (emphasis added). Thus, the plaintiff must here establish that there is no material issue of fact, based on either direct or circumstantial evidence, that distribution occurred in Cablevision's market area. He has not done so.

Cablevision argues that Cass's admission that he intended to distribute the 71 boxes to his employees/co-workers at Garden City-based Weatherly Securities, most of whom allegedly resided in Nassau and Suffolk Counties, gives rise to an inference of market-area distribution. Pl.'s Mem. in Opp. at 10 (citing Cass Aff. ¶31; Cass Dep. Tr. 77, 157-59 & 319). The court agrees that material issues of fact exist in regard to Cass's alleged distribution of boxes. Because Cass's testimony about the intended recipients of the boxes is alone sufficient to raise an issue of material fact regarding distribution and market area, the court need not now address the additional arguments Cablevision makes about additional inferences to be drawn from Cass's testimony. *See* Pl.'s Aff. in Opp. at 7-24.

As to distribution in its market area, Cablevision argues that the 71 devices would work only, or primarily, in its market area. In support of this argument, Cablevision points to the sworn statement of Donald Kempton tht the devices purchased by Cass would not have worked in any non-Cablevision area east of Manhattan because only non-Motorola addressable systems were used. Pl.'s Mem. in Opp. at 20. An Export Report by Michael Muller of Motorola Broadband, who examined five of the devices produced for inspection by Cass, states that they would enable the unauthorized descrambling of cable services on a Motorola addressable control cable TV system. *Id.* citing to Ex. P. Finally, Cass admits that he returned five RFT-Pioneer

devices and exchanged them for five RFT-Gold devices. This, Cablevision argues, is significant because the RFT-Pioneer devices would not work in Cablevision's Nassau and Suffolk areas, thus suggesting that use of those devices was attempted in this market area, and, when they did not work, they were returned because Cass wanted devices that worked in Cablevision's market area. The court finds that these arguments are sufficient to raise material issues of fact as to distribution in Cablevision's market area, issues of fact that must be resolved at trial.

**B.) Cablevision's Motion:**

Cablevision moves for an "Order Authorizing Disclosure of Subscriber Information Pursuant to 47 U.S.C. §551(c)(2)(B), by Notice of Motion dated January 27, 2005. Cablevision had made an earlier letter application dated December 23, 2004, that, despite an indication on its face that was electronically filed, does not appear on the docket. The defendant opposed the December 23rd application by letter dated December 30, 2004, and the court construes the December 30th letter as opposition to the January 27th motion. Cablevision also seeks additional discovery.

As noted earlier, Cablevision claims that the 71 boxes it inspected are "replacement" boxes that Cass obtained after distributing the original 71 boxes. If true, that fact would support an inference that the original boxes were distributed. Cass maintains that they are the original 71 boxes, which would prove his claim that he did not distribute them. Resolution of this issue is key to a determination of this action. Cablevision reports that in June 2004, it brought an action in California that yielded identification, *inter alia*, of a sales record that authenticates a sale of 100 RFT Gold devices on August 6, 2002, to "John Lambert," shipped to 600 Old Country Road in Garden City, New York, the same address to which the boxes purchased by Cass had been

shipped.  *See* Pl.'s Mtn. ¶5.  Cablevision had contacted Cass in July 2002 regarding a possible

lawsuit involving the 71 boxes.  Def.'s Rule 56.1 Stmt. ¶4.  Cablevision states that the address

and telephone number for "John Lambert" have a connection to those of a former Cablevision

subscriber, and that the former subscriber has links to Cass.  *Id.* ¶6.  However, given the

protection of subscriber information under 47 U.S.C. §551, Cablevision cannot disclose the

information to the Court without an order pursuant to section 551 authorizing disclosure.

47 U.S.C. §551 provides, in pertinent part:

§551 **Protection of subscriber privacy**
. . . (c) Disclosure of personally identifiable information:

(1) Except as provided in paragraph (2), a cable operator shall not disclose
personally identifiable information concerning any subscriber without the prior
written or electronic consent of the subscriber concerned and shall take such
actions as are necessary to prevent unauthorized access to such information by a
person other than the subscriber or cable operator.
(2) A cable operator may disclose such information if the disclosure is –
   (A) necessary to render, or conduct a legitimate business activity
   related to, a cable service or other service provided by the cable
   operator to the subscriber;
   (B) subject to subsection (h) of this section, made pursuant to a court
   order authorizing such disclosure, if the subscriber is notified of such
   order by the person to whom the order is directed;
   (C) a disclosure of the names and addresses of subscribers to any
    cable service or other service, if –
       (i) the cable operator has provided the subscriber the opportunity
      to prohibit or limit such disclosure, and
       (ii) the disclosure does not reveal, directly or indirectly, the –
          (I) extent of any viewing or other use by the subscriber of a
          cable service or other service provided by the cable
          operator; or
          (II) the nature of any transaction made by the subscriber
          over the cable system of the cable operator;
                     . . .

Cablevision states that, under Section 551(c)(2)(C), it can release the name and address of

the Former Subscriber after providing notice to the Former Subscriber of the proposed

disclosure, and an opportunity to limit the disclosure, providing that the disclosure does not

reveal, directly or indirectly, the extent of the Former Subscriber's cable system viewing or use

habits.  Pl.'s Mtn. ¶8.  Here, Cablevision intends to disclose the Former Subscriber's name and

address, and has provided the Former Subscriber with notice of the intended disclosure sent to its

last-known address and the New York State Department of State Division of Corporations.  *Id.* &

Ex. B.  The letter sent to the Former Subscriber's last known address was returned to Cablevision

marked "Addressee Unknown;" an Affidavit of Service confirms service on the New York State

Department of State Division of Corporations on January 7, 2005.  *Id.* ¶10 & Ex. C.  In its notice

dated January 3, 2005, Cablevision gave the Former Subscriber until January 21st [3] to "attempt to

prohibit or limit Cablevision's disclosure."  Ex. B at 2.  No response was received by

Cablevision from the Former Subscriber.  Pl.'s Mtn. ¶10.  Thus, pursuant to the express terms of

section 551(c)(2)(C), Cablevision argues, it can release the Former Subscriber's name and

address.

Cablevision also intends to disclose information in addition to the Former Subscriber's

name and address, such as the telephone numbers, dates of service, and the identity of the contact

person at the Former Subscriber.  Such additional information is not covered by Section 551

(c)(2)(C), and thus Cablevision seeks an order from this court pursuant to Section 551 (2)(B)

allowing such disclosures.  *Id.*  ¶8.  Cablevision also seeks an order allowing discovery to

determine whether there is any connection between Cass and John Lambert.  *See* 12/23/04 Letter,

---

[3]The court notes Cablevision's erroneous statement in the letter of notice that the deadline
for objections was January 21, 2004, not 2005, and agrees that a common sense reading of the
letter would lead any reasonable recipient to recognize that January 21, 2005 was intended.

Pl.'s Mtn., Ex. A.

The defendant, in his letter of December 30, 2004, opposes Cablevision's motion for additional discovery. Cass focuses, in his opposition, on Cablevision's application for additional discovery, but the court assumes he also opposes the application for disclosure regarding the Former Subscriber pursuant to Section 551. Nonetheless, the court will grant both prongs of the plaintiff's motion. The question of whether the 71 boxes examined by Cablevision are the original boxes or substitute boxes is central to the dispute, and there is enough of a suggestion - including the address and the timing of the Lambert purchase - that the boxes purchased by John Lambert could somehow be connected to this lawsuit, that discovery on that issue should be allowed. The defendant will not be prejudiced by the discovery, and could be helped by it. Thus, the court orders that Cablevision may disclose the name, address, telephone numbers, dates of service, and the identity of the contact person at the Former Subscriber and may engage in discovery on the sale of boxes to John Lambert. Cablevision should submit, within one week of the date of this order, a proposed discovery schedule for the new discovery, and the defendant shall submit any objections to the discovery within one week of the date of service of the proposed schedule.

Dated: Central Islip, New York
     April 26, 2005

                                        **SO ORDERED:**

                                        s/ William D. Wall
                                        WILLIAM D. WALL
                                        United States Magistrate Judge